CITY OF BRIDGETON, RESPONDENT, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, APPELLANT.

Submitted December 6, 1915—Decided March 6, 1916.

1. The facts of this case *held* to bring it within the rule of *Monmouth Park Association* v. *Wallis Iron Works.* 55 *N. J. L.* 132, that a court of law should read a written contract according to the obvious intention of the parties, in spite of clerical errors or omissions which can be corrected by perusing the whole instrument.

2. The right of a municipality which has let a working contract to a contractor, and has been compelled by his default in performance to terminate his employment by virtue of a provision in the contract and complete the work itself, to hold the contractor's surety for extra expense occasioned thereby, is not lost by the inaccurate use of the word "rescind" in the resolution terminating the employment, where it appears that the whole course of proceeding was aimed at securing, not the technical rescission of the contract, but its actual performance.

3. Evidence that a person having business with a corporation called at its principal office, and, stating his business, was shown to the "contract department" and introduced to Mr. M. as the vice president, apparently in recognized charge of that department, will support the inference of his agency for the corporation as to matters properly within the scope of the business apparently entrusted to him, and justify the admission of his declarations in the course of that business.

---

On appeal from the Supreme Court.

For the appellant, *Condict, Condict & Boardman.*

For the respondent, *William A. Logue* and *James Boyd Potter.*

The opinion of the court was delivered by

PARKER, J. The suit was upon a bond of the defendant and the Hudson Terminal Company for the faithful performance by the latter of a contract with plaintiff relating to the construction of sewers. As much of the argument revolves around an evident hiatus in the language of the condition of the bond, the condition is here inserted in full, indicating the hiatus, although in the bond the wording runs continuously.

"The condition of this obligation is such that whereas the above-bounded Hudson Terminal Construction Company has on the 26th day of May, one thousand nine hundred and ten, entered into a contract with the city of Bridgeton, New Jersey, for furnishing and delivering supplies and constructing sewers, as more particularly designated in the said contract and specifications hereto attached, now, therefore, if the above-bounded Hudson Terminal Construction Company, its heirs, executors or administrators, successors or assigns, shall and will in all respects duly and fully observe and perform all and singular the covenants, conditions and agreements in and by the said contract and specifications agreed and covenanted by it to be observed and performed and according to the true intent and meaning of said contract and specifications * * * that may be granted on the part of the said city of Bridgeton, New Jersey, as during the original term of the same, and will indemnify and save harmless the city of Bridgeton, New Jersey, from and against all suits, claims, demands or actions for any injury or damages sustained or alleged to have been sustained by any party or parties by or from causes under the control of the said contractor in the construction of the work, or any part thereof, or any neglect in protecting the same, then the above obligations shall be void and of no effect; otherwise to remain in full force and virtue."

The trial was without jury.

The defendant moved to nonsuit upon the ground, *inter alia*, that no breach of the condition had been pleaded in terms of the bond, and that no breach of the condition had been shown. The motion being denied, defendant offered no evidence, but rested its case and moved for judgment on the same grounds as those in the motion to nonsuit, and the denial of those motions made on the ground just stated is the first point assigned and urged for a reversal.

The complaint pleaded the bond and its condition, omitting the words "that may be granted on the part of the city of Bridgeton, New Jersey, as during the original term of the same;" and this omission, it is claimed, vitiates it. But it is sufficient to invoke the familiar rule that in pleading any document, a copy may be annexed to the pleading and referred to therein with like effect as if recited at length. Section 119 of the Practice act of 1903, covering this point, was repealed by the supplement of 1912 (*Pamph. L., p.* 377), but rule 23, annexed to that supplement, and now rule 37 in the 1913 revision of the Supreme Court rules, reads as above and fully covers the ground. A true copy of the bond was annexed to the complaint and referred to therein.

As a preliminary to ascertaining whether a breach of the bond had been shown, we must ascertain what the contract was.

We agree with counsel for appellant that it is obvious, and we are informed by his brief that "it was admitted at the trial in the court below," that (to quote counsel's language) certain words which should have been inserted between the words "contract and specifications," and the following words "that may be granted," &c., had, somewhere along the line, been omitted. There being concededly an hiatus, and no evidence having been admitted to supply the missing words, on account of defendant's objection thereto, the difficulty is to be resolved in one of three ways, according to the view properly taken of the instrument as it stands—(1) If the omitted language is plain from the context, it will be supplied by the court. *Sisson* v. *Donnelly*, 36 *N. J. L.* 432, 439; *Monmouth Park Association* v. *Wallis Iron Works*, 55 *Id.* 132, 140.  (2) If

the confusing language is insensible, and if disregarded will leave a complete and intelligible instrument, it may be rejected as surplusage. 9 *Cyc.* 585. (3) If the hiatus may not be supplied, nor the objectionable language disregarded, and the instrument as a whole is ineffective, it cannot be enforced unless perhaps reformed in equity.

We incline to the view that the hiatus may be substantially supplied. It is plain enough that something else than the contract and specifications "may be granted," first, because the bond says the contract *has been made,* and that it and the specifications are thereto attached; secondly, because the clause, "as during the original term of the same," necessarily implies an antithesis of some other term or period than the original term "of the same," *i. e.,* of the contract. The familiar form of such an antithesis is "as well * * * as * * *." We may therefore construct it as far as this: "as well for * * * period that may be granted on the part of said city of Bridgeton, New Jersey, as during the original term of the same."

When the character of the bond is considered, the remainder becomes simple. The bond is a surety bond, for the faithful performance of a working contract. It is a fact familiar to every lawyer in active practice that in the relation of principal and surety, the surety is frequently held to be discharged from his obligation by reason of some alteration of the primary contract without his consent; and that probably the most frequent ground of discharge is the extension of time for the completion of the contract. In this situation it is often stipulated that the surety shall not be discharged by alteration of the main contract, as in *Guttenberg* v. *Vassel,* 74 *N. J. L.* 553, a case of payments to the contractor in advance of the due dates, and *Jersey City Water Supply Co.* v. *Metropolitan Construction Co.,* 76 *Id.* 419, where the provision was for alteration in performance of work or furnishing of materials. Bearing all these things in mind, the only reasonable conclusion is that the omitted language related to some extension of the time of performance stipulated by the contract. What the precise language was intended to be; how it read in the origi-

nal draft, or dictation, or form given to the copyist; or whether the extension was to be limited, are questions that do not now concern us, or the parties, for no extension appears to have been granted, and, consequently, it is sufficient to take the bond as it is, with the troublesome clause made intelligible by getting at the general nature of the omitted words to which it was intended to be joined. Were this not so, we still consider that the clause may be disregarded altogether as admittedly connected with something else that was omitted, and the bond will stand as a complete instrument. It should be given effect, if possible, and the disputed clause as part of some longer clause is manifestly insensible. As already noted, there is no claim that it should be construed in immediate connection with the language actually preceding it. We conclude, then, that the bond may be viewed either as containing some clause about extension of time, not material in view of the facts, or as a simple bond guaranteeing performance according to the contract as originally made. That both the city and the surety recognized the existence of a valid obligation is shown by the correspondence, in which the surety, on being informed of the contractor's default, renounced its right to prosecute the work, and three days later offered to extend its obligation to the receiver of the contracting company if he should take up the work. This disposes of the first ground of appeal argued.

The next ground of appeal is that plaintiff was barred from recovery because the contract was "rescinded;" whereas, in order to hold the surety, the reliance must be upon the contract itself as an existing obligation. This is more fanciful than real, and hangs entirely on the legal and technical meaning of the word "rescind," which is a word peculiarly liable to inaccurate and careless use. The contract itself is not laid before us; in all probability it contains a provision that in case of delay or neglect in the performance of the work, the city might terminate the contract and complete the work itself, or relet the remaining work to another contractor. It would not be at all surprising if the contract expressly pro-

vided that in such case the city might "rescind" the contract, but plainly a technical rescission would not in such case be meant. Rescission, ordinarily, implies the act of both parties, and in cases where it is the act of one because of the default of the other, it implies at least a restoration of the *status quo*. What the city did was to pass a resolution reciting the making of the contract, the making of the surety bond, the abandonment of the contract by the contractor, notice to the said contractor to complete the work, and noncompliance therewith, and providing that said contract be rescinded; that the city complete the pipe lines; that the city engineer prepare new specifications, if necessary, to advertise for proposals, and that copies of the resolution be served on the contractor and surety. The surety acknowledged receipt of the copy, and in its reply of January 10th, called it a "resolution annulling the contract," and suggested that the city "complete the work in such manner as you see fit under section 'W' of your contract and surcharge us with the difference." Three days later, as already stated, it wrote to the city clerk suggesting that the receiver might elect to complete the work and offering to be his surety. Plainly, it did not consider the resolution as intended or effective to wipe out the contract entirely, but took it for what it really was, a revocation of the contractor's right to continue the work, and a resort to the city's right to have the work completed by itself or by a new contractor. In the memorandum of decision by the trial judge the matter was properly disposed of as follows:

"Now, defendant contends that the use of the word 'rescind' in said resolution meant an extinguishment of the sewer contract, and all else connected with it, but after a careful examination of all the facts, I am certain that this ill-chosen word was not used according to its technical significance, nor was its use so regarded by the parties concerned or their counsel. The proof, as gathered from the conversations, letters and telegram, conclusively shows the sense in which the word was used and understood. I am, therefore, not

willing at this late day, especially in view of the truth as I find it from the undisputed facts, to hold that the contract in question was rescinded, for it was not. All that happened, as I have said, was merely a taking over of the unfinished portion of the contract exactly in the way the contract contemplated in such an emergency as was then present.

"But defendant still insists, even in the face of the facts, that since the word 'rescind' was used in the resolution of the municipal body, plaintiff is bound by it regardless of the intention and understanding of the parties. I am sure that cannot be so. I know that in some solemn instruments where words of fixed legal signification are employed, the meaning of such words cannot, as a rule, be questioned, but there surely cannot be any justification for an arbitrary rule requiring individuals or corporations to always use the right word or suffer when they use the wrong one harmlessly. Defendant was not harmed by the use of the word in question, nor did it join in the so-called rescission. I, therefore, have no difficulty in refusing to affirm this contention."

But it is said that the court erred in admitting the letter of January 10th, signed by one Murdoch, in evidence. It was concededly competent to show receipt of the resolution by the surety; there was no question of its authenticity. The basis of the objection was that the "rescission" had eliminated the contract, and that the letter, if admitted, would make a new contract not within Murdoch's authority to make (he signed "Vice President and Engineer"). What we have said on the subject of rescission disposes of this objection, and substantially of a similar objection to a statement of Murdoch to the witness McGear, that he was "head of the contract department." Furthermore, we think the testimony was within the spirit of *Corey* v. *Wolff*, 72 *N. J. L.* 510, and *Smith* v. *Delaware and Atlantic Telephone Co.*, 64 *N. J. Eq.* 770. The latter case is almost identical on the facts of corporate representation. McGear testified that he went to the principal office of the defendant, at Baltimore, to serve the resolution, entered the "contract department," and there saw

Murdoch, after being directed thither by various clerks in the office. The situation was plainly such as to render competent the above statement of Murdoch as an official placed in that department by the defendant, ostensibly to deal with those having business there.

Finally, it is urged that there was no evidence to support a recovery because all the evidence shows that the total expenditure in completing the work, plus what had been paid the contractor, amounted to less than the contract price. The fallacy of this lies in the assumption that the contract price was the engineer's preliminary estimate. The contractor's compensation was not a lump sum, but based on actual work done and material furnished according to unit figures in the bid. On the final adjustment it appeared that some of the items overran the preliminary estimate, and others fell short of it; the net result, as testified by the city engineer, being that the contractor would have been entitled, in case he had completed, to $2,039.35 less than the estimated total, and $4,178 less than the city actually had to pay to secure completion. The court found in the latter sum, with interest, and its finding being supported by evidence, is not reviewable here.

The judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ.   13.

*For reversal*—None.